No. 29.—JOHN BELCHER, plaintiff in error, *vs.* ABSALOM GREY and WILLIAM R. PHILLIPS, executors of Matthew B. Tollison, deceased, defendants.

[1.] Where suit is brought on an open account for board, and the testimony establishes that a certain portion of it is due, but leaves it uncertain as to

the remainder, the Jury are bound to find a verdict at least for the amount proven.

Assumpsit, in Spalding Superior Court.     Tried before Judge STARKE, May Term, 1854.

This was an action brought to recover the price of board, furnished the defendant's testator, for himself and his horses, for the years 1847 and 1848, at $5\frac{20}{100}$ dollars per month.

It appeared from the testimony, that Tollison was a wagoner by trade; that he boarded himself and team with the plaintiff, during the years stated, off and on at different periods, but that he was frequently absent, following his business.

No witness could state any definite time that Tollison had boarded at plaintiff's house, except that one said "he was there sick from about the middle of the Spring of 1848, until the latter part of Summer or the first of Fall in that year." Another witness said he was there the "most of the year 1848;" and another, that he was there "the most of the time during 1847 and 1848." Board was proven to be worth more than was charged.

The Court charged the Jury, among other things, that it was not sufficient for them to be convinced that something was due; that they must be satisfied from the proof, that some definite sum was due, before they could find any sum for the plaintiff; and that they ought to scrutinize more closely, a claim made against a dead man's estate than they would in a controversy between the living. To these portions of the charge exception is taken.

The Jury found a verdict for the defendants, on which plaintiff moved for a new trial, on the ground that the verdict was contrary to the evidence, as well as on the ground of error in the above stated charge of the Court.

The Court refused the rule, which decision is alleged as error.

GREEN & MARTIN, for plaintiff in error.

DOYAL, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] We propose to put our judgment in this case, upon the narrowest ground. Judge *Starke*, amongst other things, charged the Jury, that "if they were satisfied, from the evidence, with a reasonable degree of certainty, that there was *any thing* due the plaintiff, they should find *that much* in his favor."

The verdict was for the defendant, and the Court refused to grant a new trial.

The only question, then, which we propose to consider is, did the proof establish with certainty, that there was *something* due Belcher for board ?  If it did, the finding of the Jury was both contrary to the testimony, and the charge of the Court, and a new trial should have been granted.

I will advert to only a portion of the evidence.

James D. Abbott testified that he knew Matthew B. Tollison, the defendant's testator, boarded with plaintiff. He does not recollect the exact time he commenced; but that he was there about the 30th of December, 1846, and continued until the first of the year 1849, *for the most of his time.*  That he heard deceased say that he intended to pay plaintiff for his board; that he always spoke of plaintiff's house as his home, and that he had his washing and sewing done there.  He further stated that Tollison was sick from some time in the Spring of 1848, until the latter part of the Summer or the first of Fall of the same year.  The physician, Dr. Peddy, informed witness that his disease was syphilis.  Provisions were scarce and high during the time that Tollison lived with Belcher; and witness thinks seven dollars per month for a man and his team, would be a reasonable charge.  He says he boarded with plaintiff the entire years 1847 and 1848; that he resided in a mile

of plaintiff's; saw Tollison there during that time. When he was able to travel, he was on the road with his wagon, most of the time. He never saw Tollison pay Belcher any money for board; never heard plaintiff acknowledge the receipt of any : but on the contrary, always understood from him that he had paid him nothing. Again, this witness swears that Tollison was confined, *most of the time* that he lived with plaintiff, so as not to be able to get about. That Tollison left at the beginning of the year 1849, stating that he would return : but that he never did, and that he often said he would pay plaintiff. He was frequently at Belcher's in 1848, while Tollison was sick; and he would say that One Hundred and Twenty-five Dollars was a moderate amount for the two years' board of Tollison and his team. When Tollison left with his team, he would take corn and fodder for them and provisions for himself.

Sterling Mize swore, that Tollison's occupation was wagoning, and that it would have required him to be most of his time from home: but that during the year 1848, he remained at plaintiff's *most of his time* sick.

In addition to this proof, there was the corroborating testimony of John Lovinggood and Joseph J. Knight.

There can be little doubt but that it was the intention of the witnesses to put the value which they did on the board, making due allowance for the absence of Tollison. But if this were not so, still the Jury would have been warranted in finding a verdict for one-half of the whole time that Tollison lived at Belcher's, beginning 30th December 1847, and ending the 1st of January, 1849. In other words, for one year. But setting aside the testimony of Abbott, Mize swears that Tollison spent *most of the year* 1848 at plaintiff's, on account of his sickness. How then could the Jury excuse themselves for not finding for the six months' board, thus positively established ?

But coming down still more, the testimony is certain and indisputable, that Tollison was confined at one time, at the house of plaintiff from sickness, from the Spring of 1848, till the latter part of the Summer, or the first of the Fall of that year. The Jury were constrained, therefore, to find for at

least two months and a half board.    And to do otherwise, was to disregard the proof as well as the charge of the Court.

His Honor, the presiding Judge, reminded the Jury in the beginning of his charge, that the action was brought to recover an account against the estate of a *dead man*.

And that it was their duty to scrutinize it the more closely on that account; or to use the language attributed to him by Col. Doyal, the Counsel for the defendant below and in error, he considered himself " as standing between the living and the dead."    And it is right that the estates of the dead should be narrowly watched.    It is a most commendable vigilance—for they are no doubt often plundered by spurious claims.    *Every* man living, has a personal interest in this matter, for it is appointed unto *all* men once to die.

There is, however, another consideration in this case, which should not have been overlooked.    It is a suit in behalf of the citizens of a sister State, against one of our own people.    Courtesy requires—our respectability as a State demands, that non-residents who come into our Courts to seek justice at our hands, should feel that it has not been improperly withheld from them. To refuse a new trial in this case, is not only to say, in substance, to the plaintiff, that he has trumped up a false demand, but that it has been upheld by perjured witnesses.    Good neighborhood forbids that any such odious discrimination be made, and that, too, in the face of such a record.

Justice requires that the cause be remanded, and a re-hearing ordered.